Rene L. Valladares
Federal Public Defender
Nevada Bar No. 11479
Jeremy C. Baron
Assistant Federal Public Defender
District of Columbia Bar No. 1021801
jeremy_baron@fd.org
Heidi Ojeda
Assistant Federal Public Defender
Nevada Bar No. 12223
heidi_ojeda@fd.org
411 E. Bonneville Ave. Suite 250
Las Vegas, NV 89101
(702) 388-6577
(702) 388-5819 (fax)

Sean A. McClelland
Assistant Federal Public Defender
Nevada Bar No. 16581
sean_mcclelland@fd.org
200 S. Virginia St. Suite 340
Reno, Nevada 89501

Attorneys for Devonte Devon Jackson

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Devonte Devon Jackson,<br><br>Defendant. | Case No. 2:25-cr-240-DGC-BNW<br><br>**Reply in support of motion to dismiss indictment or disqualify U.S. Attorney's office**[1] |

[1] This motion is timely filed under the Court's minute order setting a briefing schedule.

# TABLE OF CONTENTS

Argument ........ 1

I. Ms. Chattah is not properly serving as U.S. Attorney. ........ 2

A. The administration cannot designate an acting officer simply by backfilling the first assistant role. ........ 2

1. The government fails to adequately respond to the defense's arguments. ........ 2

2. The government's textual analysis is unsound. ........ 5

3. Legislative history and purpose support the defense. ........ 8

B. An interim U.S. Attorney cannot serve for more than 120 days, even if the individual switches to an acting role. ........ 10

C. The FVRA precludes the administration from assigning a de facto acting officer through a general delegation. ........ 14

D. The government's reading violates the Appointments Clause. ........ 17

II. The Court should dismiss the indictment; the judges of the district may select an interim U.S. Attorney. ........ 20

A. The Court should dismiss the indictment or enter a disqualification order. ........ 20

B. The judges of this district may select an interim U.S. Attorney. ........ 24

Conclusion ........ 25

## TABLE OF AUTHORITIES

**Cases**


*Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328 (Fed. Cir. 2022) .................. 16

*CPC Patent Techs. Pty Ltd. v. Apple, Inc.*, 34 F.4th 801 (9th Cir. 2022) ................ 19

*Erikson v. Pawnee Cnty. Bd. Of Cnty. Com'rs*,
263 F.3d 1151 (10th Cir. 2001) ................................................................ 21, 22

*Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. U.S. Dep't of Homeland Sec.*,
107 F.4th 1064 (9th Cir. 2024) ................................................................ 16

*Gonzalez v. Herrera*, 2025 WL 2396495 (9th Cir. 2025) ........................................ 8, 9

*Guidiville Band of Pomo Indians v. NGV Gaming, Ltd.*,
531 F.3d 767 (9th Cir. 2008) ................................................................ 6

*Hooks v. Kitsap Tenant Support Services, Inc.*,
816 F.3d 550 (9th Cir. 2016) ................................................................ 3, 8, 11

*Humphrey's Executor v. United States*, 295 U.S. 602 (1935) .................................... 19

*In re Grand Jury Investigation*, 315 F. Supp. 3d 602 (D.D.C. 2018) ................ 18, 19

*Intercollegiate Broad Sys., Inc. v. Copyright Royalty Bd.*,
684 F.3d 1332 (D.C. Cir. 2012) ................................................................ 18

*Kajmowicz v. Whitaker*, 42 F.4th 138 (3d Cir. 2022) .............................................. 16

*Kalaris v. Donovan*, 697 F.2d 376 (D.C. Cir. 1983) ................................................ 19

*Kisor v. Wilkie*, 588 U.S. 558 (2019) ................................................................ 8

*L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1 (D.D.C. 2020) ................................ 2, 3, 5, 8

*Myers v. United States*, 272 U.S. 52 (1926) ................................................ 18, 19

*Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) (en banc)........................................ 18

*Morrison v. Olson*, 487 U.S. 654 (1988) ................................................................ 19

*Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285 (9th Cir. 1985) .................. 19

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
591 U.S. 197 (2020) ................................................................ 12

*SW General, Inc. v. NLRB*, 796 F.3d 67 (D.C. Cir. 2015) .................................... 2, 10

*TRW Inc. v. Andrews*, 534 U.S. 19 (2001) ........ 5, 13
*United States v. Arthrex*, 594 U.S. 1 (2021) ........ 18
*United States v. Baldwin*, 541 F. Supp. 2d 1184 (D.N.M. 2008) ........ 21
*United States v. Bundy*, 968 F.3d 1019 (9th Cir. 2020) ........ 20, 22
*United States v. Eaton*, 169 U.S. 331 (1898) ........ 19, 20
*United States v. Gantt*, 194 F.3d 987 (9th Cir. 1999) ........ 20
*United States v. Giraud*, 2025 WL 2196794 (D.N.J. 2025) ........ 23, 24
*United States v. Giraud*, 2025 WL 2416737 (D.N.J. 2025) ........ *passim*
*United States v. Hilario*, 218 F.3d 19 (1st Cir. 2000) ........ 21
*United States v. Ruiz Rijo*, 87 F. Supp. 2d 69 (D.P.R. 2000) ........ 21
*United States v. Suescun*, 237 F.3d 1284 (11th Cir. 2001) ........ 21
*United States v. Trump*, 740 F. Supp. 3d 1245 (S.D. Fla. 2024) ........ 14, 20
*United States v. Williams*, 68 F.4th 564 (9th Cir. 2023) ........ 23, 24
*United States v. Young*, 541 F. Supp. 1226 (D.N.M. 2008) ........ 21
*Wilcox v. Trump*, 775 F. Supp. 3d 215 (D.D.C. 2025) ........ 19
*Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987) ........ 21

**Statutes, Regulations, Rules**

5 U.S.C. § 3345 ........ *passim*
5 U.S.C. § 3347 ........ 14, 15, 16
5 U.S.C. § 3348 ........ 16, 20
18 U.S.C. § 208 ........ 21
28 U.S.C. § 546 ........ *passim*
28 C.F.R. § 0.137 ........ 4
Fed. R. Crim. P. 7 ........ 22

**Other**

23 Op. O.L.C. 60 (1999) .................... 8

25 Op. O.L.C. 177 (2001) .................... 8

144 Cong. Rec. S11037 (daily ed. Sept. 28, 1998) .................... 9

144 Cong. Rec. S12822 (daily ed. Oct. 21, 1998) .................... 7

153 Cong. Rec. S15227-01 (daily ed. Dec. 12, 2007) .................... 13

Brief for the Petitioner, *NLRB v. SW Gen., Inc.* (No. 15-1251), 2016 WL 4363344 (Aug. 12, 2016) .................... 10

Federal Vacancies Reform Act, S. Rep. No. 105-250 (1998) .................... 7, 9, 15

Letter from Carlotta C. Joyner, Dir., Strategic Issues, GAO, to Fred Thompson, Chairman, U.S. Senate Comm. on Governmental Affairs (Feb. 23, 2001) .................... 8

Letter from Victor S. Rezendes, Dir., Strategic Issues, GAO, to U.S. Senators Joseph I. Lieberman and Dan Burton, at 2 (Dec. 7, 2001) .................... 8

Samuel L. Bray, *The Mischief Rule*, 109 Geo. L. J. 967 (2021) .................... 13

Steven J. Duffield & James C. Ho, *The Illegal Appointment of Bill Lann Lee*, Note, 2 Tex. Rev. L. & Pol. 335 (1998) .................... 10

## Argument

Because Sigal Chattah is not eligible to serve as acting U.S. Attorney, the Court should either dismiss the indictment or disqualify her and the attorneys she supervises. The government's response proceeds in five steps and fails at each one.

I.A. Ms. Chattah cannot serve under 5 U.S.C. § 3345(a)(1). The statute provides that if a vacancy occurs, the person serving as first assistant *when the vacancy occurs* becomes the acting officer. The government's contrary argument—the administration may backfill anyone of their choosing into the first assistant role post-vacancy and thus elevate that person to the acting role—is wrong.

I.B. In the alternative, Ms. Chattah's time as acting U.S. Attorney has expired. The specific 120-day limit from 28 U.S.C. § 546(c) controls over the general time limits from the FVRA. The government fails to demonstrate otherwise.

I.C. The government presents an alternate theory: if Ms. Chattah is not qualified as a de jure acting officer, she can serve as a de facto acting officer under the Attorney General's general delegation authority. The Court should reject this workaround, just as Congress did when it enacted the FVRA.

I.D. Ms. Chattah is occupying a supposedly temporary but potentially indefinite role as U.S. Attorney. That role requires Senate confirmation under modern constitutional precedent. The government unsuccessfully tries to distinguish that precedent. Were there any doubt, the Court should read the statutes in the defense's favor to avoid serious constitutional concerns.

II. The proper remedy is to dismiss the indictment. In the alternative, the Court should disqualify Ms. Chattah and the attorneys she supervises. The

government fails to address the defense's primary arguments on these remedial issues. The Court should grant the motion and provide an appropriate remedy.

# I. Ms. Chattah is not properly serving as U.S. Attorney.

## A. The administration cannot designate an acting officer simply by backfilling the first assistant role.

When a qualifying vacancy occurs, the first assistant "shall perform the functions and duties of the office temporarily in an acting capacity." 5 U.S.C. § 3345(a)(1). This provision applies to the person who was serving as first assistant when the vacancy occurred; the administration cannot backfill the first assistant role. The government's counterarguments are unpersuasive.

### 1. The government fails to adequately respond to the defense's arguments.

The motion (at 16–17) provides ample reason why the government's backfill theory is wrong: Section 3345(a)(1) applies only to an already-in-place first assistant. The government does not successfully address the defense's position.

As the motion explains (at 16), the relevant case law supports the defense. *See United States v. Giraud*, __ F. Supp. 3d __, 2025 WL 2416737, at *14–*19 (D.N.J. Aug. 21, 2025); *see also id.* at *14 n.155 (collecting cases); *SW General, Inc. v. NLRB*, 796 F.3d 67, 76 (D.C. Cir. 2015); *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 27–28 (D.D.C. 2020). The government has no answer to these authorities.

*L.M.-M.* is instructive, but the government does not even mention it. There, the principal office was vacant, and there was an existing individual in the first assistant role who was serving as acting officer. The administration wanted someone else in the acting role. So it created a new position in the agency,

designated that position the new first assistant, hired someone from outside the agency to fill the new position, and purported to have that person serve as the acting officer; the position would then disappear upon confirmation of a permanent officer. The court rejected the maneuver. A first assistant must be subordinate to a principal; an individual "does not qualify as a 'first assistant' [if] he was assigned the role of principal on day-one and, by design, he never has served and never will serve in a subordinate capacity to any other official at [the agency]." 442 F. Supp. 3d at 26 (cleaned up). "[L]abels—without *any* substance—cannot satisfy the FVRA's default rule." *Id.*

A similar analysis applies here. Ms. Chattah cannot "qualify as a 'first assistant'" because she "was assigned the role of principal on day-one"—immediately upon her designation as first assistant—and it appears the administration does not intend for her to ever "serve in a subordinate capacity to any other official at" the U.S. Attorney's Office. *L.M.-M.*, 442 F. Supp. 3d at 26 (cleaned up). "[L]abels—without *any* substance—cannot satisfy the FVRA's default rule." *Id.* The government attempts to rely on mere labels here while providing no response to this case.

In addition to case law, the statutory structure supports the defense. As the motion explains (at 10), Section 3345(a)(1) "fills the [vacancy] automatically." *Hooks v. Kitsap Tenant Support Services, Inc.*, 816 F.3d 550, 557 (9th Cir. 2016). The President does not designate a specific individual to serve as acting officer under subsection (a)(1); rather, the provision triggers when the vacancy occurs. By contrast, subsections (a)(2) and (a)(3) allow "the President (and only the President)"

to override subsection (a)(1) and direct another qualified individual post-vacancy to serve as acting officer. Because subsection (a)(1) is an automatic default rule—unlike subsections (a)(2) and (a)(3), which authorize discretionary post-vacancy designations—subsection (a)(1) is not "meant to trigger at any time other than the moment that the vacancy occurs." *Giraud*, 2025 WL 2416737, at *14. The government fails to address the *Giraud* decision's analysis on this issue—the first of many times the government will simply ignore this well-reasoned decision.

Surplusage concerns underscore the defense's interpretation. As the motion explains, Sections 3345(a)(2) and 3345(a)(3) provide limited categories of individuals, other than the already-in-place first assistant, who can serve in an acting role. But if the administration can simply backfill the first assistant role, the administration can select anyone it wants to be the acting officer, so the President would hardly ever need to resort to subsections (a)(2) or (a)(3).

The government brushes aside the surplusage problem because some first assistants themselves require Senate confirmation; in those cases, it would be harder to backfill the first assistant role. Response at 10.[2] But to demonstrate a surplusage concern, a litigant need not prove the provision "would lie dormant in"

---

[2] The surplusage problem may still exist under this category. If the primary office's first assistant role itself requires Senate confirmation, there will generally be a designated first assistant (call it an "under-assistant") to the first assistant role. *See* 28 C.F.R. § 0.137(b) ("Every office within the Department to which appointment is required to be made by the President with the advice and consent of the Senate . . . shall have a First Assistant within the meaning of the Federal Vacancies Reform Act."). Under the government's theory, it appears the administration could backfill a non-Senate-confirmed under-assistant role; that person would then be automatically elevated to the acting first assistant role; and that person might then be further elevated to the primary acting officer role.

100 percent of situations—just in "all but the most unlikely situations." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). The government's non-surplusage theory presumes the primary office and the first assistant role both require Senate confirmation, and the administration seeks to backfill the first assistant role. "The coincidence of those two circumstances will undoubtedly be 'unusual,' and therefore the Government's argument does little to assuage [the] concerns about surplusage." *Giraud*, 2025 WL 2416737, at *16 (quoting *TRW*, 534 U.S. at 29).[3] "Moreover, had Congress wished to cabin subsections (a)(2) and (a)(3) to PAS first assistants, it could have said so using much clearer terms." *Id.* "Instead, it made these two provisions exceptions to a subsection that applies to each and every first assistant." *Id.* For the second time, the government fails to address *Giraud*.

**2. The government's textual analysis is unsound.**

The government attempts to support its backfill theory with four arguments. None is convincing.

First, the government observes that Section 3345(a) and (a)(1) are phrased in the present tense; the first assistant "shall" become acting officer if the primary officer "dies, resigns, or is otherwise unable to perform." In the government's view, the defense's argument "ignores the present-tense phrasing of the statute and the continuing nature of the vacancy." Response at 8. But Congress's choice of verbiage

---

[3] *Cf. L.M.-M.*, 442 F. Supp. 3d at 29 ("It is not an answer to say . . . that paragraphs (a)(2) and (a)(3) have meaning at least as applied to first assistant positions created by statute . . . . Simply put, overreaching in filling vacancies for positions that have statutorily designated first assistants was not the primary problem that Congress had in mind.").

supports the defense, not the government. As explained above, under Section 3345(a)(1), the first assistant "shall" fill the acting position when the vacancy occurs; under subsections (a)(2) and (a)(3), the President "may" make a post-vacancy direction. All three events happen presently: the vacancy occurs, the first assistant is elevated, and the President secures discretionary authority under subsections (a)(2) and (a)(3). Subsection (a)(1) therefore applies when the vacancy occurs, not later. *See Guidiville Band of Pomo Indians v. NGV Gaming, Ltd.*, 531 F.3d 767, 775 (9th Cir. 2008) (explaining a statute's "use of the present tense in defining 'Indian lands' unambiguously [requires] . . . the real estate must *already* be held by the United States"). "Had Congress intended [the statute] also extend to" backfilled first assistants, "it would have been the simplest of matters to word the statute differently," for example by specifying the President may direct someone post-vacancy to serve as first assistant and in turn as acting officer. *Id.*

Second, the government notes that Section 3345(a)(1) refers to "the first assistant to the office of such officer," as opposed to "the first assistant to the officer." According to the government, this distinction—office vs. officer—supports its interpretation. Response at 8. "That argument fails textually." *Giraud*, 2025 WL 2416737, at *16. "The phrase 'office of such officer' can just as easily be read as a definition for 'first assistant,'" i.e., "a term of art" as opposed to "the person on which the outgoing officer relied most heavily," *id.*, or someone serving in an

administrative assistant role.[4] Even if the phrase "refer[s] to the vacant office," not the outgoing officer, the result is the same, "because the office must become vacant for at least a moment before the first assistant begins performing its functions and duties." *Id.* For the third time, the government fails to address *Giraud.*

Third, the government relies on Sections 3345(a)(3)(A) and (b)(1)(A). Under subsection (a)(3)(A), the president may override the default rule and select a senior career employee of the agency to serve as the acting official, but the employee must have worked at the agency at least 90 days during the year preceding the vacancy. Under subsection (b)(1)(A), if the President nominates a person to the office, the person cannot be the acting officer unless the person was the first assistant for at least 90 days during the year preceding the vacancy. According to the government, those are "backward-looking eligibility requirement[s]," and subsection (a)(1) lacks such a requirement. Response at 9. True enough, unlike subsections (a)(3)(A) and (b)(1)(A), there is no 90-day requirement under subsection (a)(1)—an already-in-place first assistant becomes the acting officer even if the first assistant held that role for less than 90 days before the vacancy. But while subsection (a)(1) lacks a 90-day "backward-looking eligibility requirement," Response at 9, that does not contradict the statute's *present-tense* eligibility requirement: the individual must be the first assistant, presently, when the vacancy occurs.

---

[4] *See also* Federal Vacancies Reform Act, S. Rep. No. 105-250 at 12 (1998) (explaining the office vs. officer phrasing conforms with "the practice under current law"); 144 Cong. Rec. S12822 (daily ed. Oct. 21, 1998) (statement of Sen. Thompson) ("[T]he change in wording is not intended to alter case law on the meaning of the term 'first assistant'").

Fourth, the government relies on an Office of Legal Counsel opinion. Response at 9. But OLC "has answered" the question "differently at different times." *L.M.-M.*, 442 F. Supp. 3d at 24; *compare* 23 Op. O.L.C. 60, *4 (1999) (supporting the defense's interpretation), *with* 25 Op. O.L.C. 177, *3–*4 (2001) (supporting the government's interpretation). The government also relies on a letter from the Government Accountability Office. Response at 10. GAO has likewise answered the question differently at different times. *Compare* Letter from Carlotta C. Joyner, Dir., Strategic Issues, GAO, to Fred Thompson, Chairman, U.S. Senate Comm. on Governmental Affairs, at 2 (Feb. 23, 2001)[5] ("Eligibility can be based on . . . service as a first assistant to the former holder of the position."), *with* Letter from Victor S. Rezendes, Dir., Strategic Issues, GAO, to U.S. Senators Joseph I. Lieberman and Dan Burton, at 2 (Dec. 7, 2001)[6] (finding the government's interpretation "reasonable"). These opinions have meager persuasive value. *See Hooks*, 816 F.3d at 564 (rejecting arguments based on GAO and OLC opinions); *cf. Kisor v. Wilkie*, 588 U.S. 558, 579 (2019) (deference is "rarely" appropriate when an agency's current construction conflicts with a prior one).

### 3. Legislative history and purpose support the defense.

"[T]he statutory text is plain and unambiguous," *Gonzalez v. Herrera*, __ F.4th __, 2025 WL 2396495, at *4 (9th Cir. 2025) (cleaned up): Section 3345(a)(1) applies only to an already-in-place first assistant. "But if the statute's terms are

---

[5] Available at http://www.gao.gov/assets/80/75036.pdf.

[6] Available at https://www.gao.gov/assets/gao-02-272r.pdf.

ambiguous," the Court may consult "legislative history[] and the statute's overall purpose." *Id.* (cleaned up). Both sources reinforce the defense's interpretation.

"[T]he FVRA's legislative history supports [the defense's] reading." *Giraud*, 2025 WL 2416737, at *17. The relevant Senate Report "clearly contemplates that the first assistant provision only functions in its automatic form at the moment the vacancy occurs, and does not repeat, and suggests that the President has no role in that process." *Id.* "The report emphasizes the value of the first assistant's experience and independence, severely undercutting the idea that the President can hand pick a first assistant with the express purpose of installing them in the acting role." *Id.* As the report explains, "If there is no first assistant, no one is permitted by law to become an acting officer until the President designates a [qualified] individual to be the acting officer." *Id.* (cleaned up).[7]

Congressional "purpose" likewise supports the defense's reading. *Giraud*, 2025 WL 2416737, at *18. Prior to the FVRA, the administration argued it could use its general delegation authority to "designat[e] . . . acting officials for an indefinite period," so Congress sought "to address the deficiencies in the operation of the current Vacancies Act." *Id.* The FVRA was introduced "to strengthen" the prior Act and "was framed as a reclamation of the Congress's Appointments Clause

---

[7] *See also* S. Rep. No. 105-250 at 14 (explaining that if the Senate rejects a first nomination, the office can "be temporarily filled by 'the person' who was originally eligible to be the acting officer at the time the vacancy arose"); *id.* at 34 (minority view) ("Section 3345(a)(1) of the bill can be read to provide that . . . only the 'first assistant' to the particular Senate confirmed officer . . . can be an acting officer."); 144 Cong. Rec. S11037 (daily ed. Sept. 28, 1998) (statement of Sen. Lieberman) ("[A] first assistant apparently can take over only if he or she was the first assistant at the time of the vacancy.").

power." *SW General*, 796 F.3d at 70. Congress therefore "severely limited the options for who may perform the functions and duties of a vacant PAS office." *Giraud*, 2025 WL 2416737, at *18.[8] "A statutory interpretation that opens a gaping loophole in this tightly crafted scheme meant to provide only limited flexibility and prevent 'manipulation' flies in the face of the goal that Congress was trying to accomplish." *Giraud*, 2025 WL 2416737, at *18.

Text, history, and purpose all point to the same result: the administration may not circumvent the statutory scheme by backfilling the first assistant role.

### B. An interim U.S. Attorney cannot serve for more than 120 days, even if the individual switches to an acting role.

Moreover, even if Ms. Chattah might otherwise be a valid acting candidate under the FVRA, she cannot continue to serve as a temporary U.S. Attorney because her time has elapsed under 28 U.S.C. § 546. *See* Motion at 25–37. That section allows "[a] person appointed as United States attorney under this section" (like Ms. Chattah) to "serve" only "120 days after appointment." 28 U.S.C. §§ 546(c), (c)(2). That rule is more specific than the FVRA. Applying it here gives effect to Section 546(d)'s judicial appointment mechanism and its 150-year pedigree. And letting the administration avoid the 120-day cap would perpetuate the very

---

[8] *See also* Brief for the Petitioner, *NLRB v. SW Gen., Inc.* (No. 15-1251), 2016 WL 4363344, at *7–*8 (Aug. 12, 2016) (explaining the catalyst for the FVRA was an administration maneuver that in effect assigned an individual to a "first assistant" position "only *after* [the primary] PAS position became vacant") (citing Steven J. Duffield & James C. Ho, *The Illegal Appointment of Bill Lann Lee*, Note, 2 Tex. Rev. L. & Pol. 335, 348–53 (1998)); *id.* at *37–*38 (similar).

"mischief" Congress sought to stop when it enacted the limit in 2007. Ms. Chattah is thus unlawfully serving as U.S. Attorney.

The government does not respond to much of that analysis. *See generally* Response at 10–12. It expressly concedes, for instance, that Ms. Chattah was first "appointed . . . as United States Attorney pursuant to 28 U.S.C. § 546." *Id.* at 3. It also does not dispute that Section 546(c)(2) is a more specific—and newer—statute than the FVRA. *See* Response at 10–12. And it does not dispute that Congress specifically designed Section 546(c)(2) to prevent lengthy service by non-confirmed U.S. Attorneys like Ms. Chattah. *See id.*

Instead, the government claims that:

(1) it can switch back and forth between the FVRA and Section 546 because neither is the "'exclusive' means of filling [a] vacancy," *id.* at 11;

(2) its reading does not render Section 546(d) superfluous because judicial appointment has happened before, *id.* at 12 & n.3 (citing two instances); and

(3) the "mischief" of lengthy non-confirmed U.S. Attorney service addressed by Section 546(c)(2)'s 120-day time limit "has nothing to do with the" government's present attempt to skirt that time limit through an FVRA maneuver, *id.* at 12 (cleaned up).

None of the government's arguments is persuasive.

The government's first argument (its switching-back-and-forth theory) ignores the text of Section 546. That section caps the "serv[ice]" of any "person appointed as United States attorney under this section" to "120 days after appointment." 28 U.S.C. §§ 546(c), (c)(2). So an administration might be able to choose at the outset whether to fill a vacancy using the FVRA or using Section 546. *See Hooks*, 816 F.3d at 556. But once "[a] person" is "appointed" under Section 546,

that person can "serve" only until "the expiration of 120 days after appointment." 28 U.S.C. §§ 546(c), (c)(2). The upshot: once the administration appoints an individual under Section 546, the individual is stuck with the 120 days authorized by that statute. *See* 28 U.S.C. § 546(c)(2).

Congress could have written the statute to embrace the government's switching-back-and-forth theory—but it did not. For instance, the statute could have applied the 120-day cap to "The term of an appointment under this section"—rather than to "serv[ice]" as "United States attorney" writ large. That different phrasing would have permitted an appointee's "serv[ice]" to run longer than 120 days if the President designated them under another provision like the FVRA. Instead, Congress chose broad language that applies to *any* "serv[ice]" by a Section 546(a) appointee, regardless of an intervening designation under another statute.

The government's second argument (concerning Section 546(d) judicial appointments) actually cuts against its position here. Perhaps most obviously, that previous administrations correctly allowed district courts to fill vacant positions under Section 546(d) suggests that the instant maneuvers undercutting that role are illegal. *See Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 220 (2020). And indeed, the government makes no effort whatsoever to explain how its current theory leaves any room for Section 546(d). *Cf.* Response at 12. If the administration can appoint someone for "119 days," *id.* at 3, and then switch the appointment to the FVRA (and then perhaps switch back when that runs out), then Section 546(d)'s judicial appointment power "would lie dormant in all but the most

unlikely situations," *TRW*, 534 U.S. at 31. Such a result forecloses the government's interpretation.

The government's final claim (that Congress's interest in limiting non-confirmed U.S. Attorney service "has nothing to do with" this case, Response at 12) ignores the legislative record. As explained at length in the defense's motion, Congress enacted Section 546(c)(2)'s 120-day limit to prevent the Executive Branch from avoiding the Senate confirmation process for U.S. Attorneys—a threat under both the FVRA and Section 546. *See* Motion at 34–37 & nn.38–42. And indeed, once both statutes were on the books, then-Senate Judiciary Chairman Patrick Leahy identified the interim-plus-acting maneuver as an "erroneous" interpretation of the vacancy framework. 153 Cong. Rec. S15227-01 (daily ed. Dec. 12, 2007) (Statement of Sen. Leahy). The government's two-sentence treatment of the subject does not address that history, never mind explain how that history could be consistent with its maneuvers here. *Cf.* Response at 12. It instead offers just an interpretation that would permit it to continue "clever evasions" of the 120-day limit. Samuel L. Bray, *The Mischief Rule*, 109 Geo. L. J. 967, 1005–07 (2021). That is fatal.

In short: nothing about the government's three-page treatment of Section 546(c)'s 120-day limit is persuasive. Because Ms. Chattah was "appointed as United States attorney" under Section 546, she cannot "serve" as U.S. Attorney in any capacity, even under the FVRA, for more than "120 days after appointment." 28 U.S.C. §§ 546(c), (c)(2). That she has purported to do so renders her continued service illegal.

### C. The FVRA precludes the administration from assigning a de facto acting officer through a general delegation.

The government proposes a workaround to the FVRA problem: assuming Ms. Chattah is barred from service under Section 3345(a)(1) or timed out under Section 546(c)(2) as a technical matter, she can nevertheless perform the same role as a practical matter. According to the government, the Attorney General can perform "[a]ll the functions of the United States Attorney." Response at 13. The Attorney General can also delegate her duties. Thus, the Attorney General can reclaim the U.S. Attorney's functions; hire Ms. Chattah as a Special Attorney in Main Justice;[9] and delegate the reclaimed functions of the U.S. Attorney to Ms. Chattah. Response at 13–16. If that is correct, the administration could replace every sitting U.S. Attorney with an individual exercising delegated powers, and those individuals could serve as de facto U.S. Attorneys in perpetuity, without the Senate ever weighing in on the selections.

*Giraud* rejects this argument. "[T]he Government intends for its delegation to confer upon Ms. [Chattah] the full panoply of powers of a PAS United States Attorney." 2025 WL 2416737, at *20. "This level of delegation is consistent with the full suite of a United States Attorney's statutory duties." *Id.* But the FVRA prohibits the administration from relying on its general delegation authority to achieve this result. As Section 3347(a)(1) explains, the FVRA is the exclusive

---

[9] There's no authority for the Attorney General to appoint a Special Attorney who exercises the full suite of U.S. Attorney powers. Rather, the statutory scheme allows the administration to appoint special attorneys only "to *assist* United States Attorneys." *United States v. Trump*, 740 F. Supp. 3d 1245, 1270 (S.D. Fla. 2024).

means of having someone perform on an acting basis, unless a separate statutory provision (like 28 U.S.C. § 546) sets out an alternate procedure. As Section 3347(b) specifies, "Any statutory provision providing general authority to the head of an Executive agency . . . to delegate duties . . . is not a statutory provision to which subsection (a)(1) applies." "In other words, general vesting and delegation statutes may not be used to temporarily authorize an acting official to perform the functions and duties of any PAS office." *Giraud*, 2025 WL 2416737, at *21 (cleaned up). "The Government's 'Special Attorney' theory crashes headlong into this unambiguous barring provision." *Giraud*, 2025 WL 2416737, at *22. Using a general delegation to designate a de facto acting officer "is exactly what section 3347(b) prohibits." *Id.*

The government's theory likewise ignores the "legislative history." *Giraud*, 2025 WL 2416737, at *22. "The FVRA's exclusivity provision was enacted for the *express purpose* of precluding the *exact argument* that the Government presses here." *Id.* "For years, the Department of Justice had argued that the Vacancies Act did not apply to it and that vacancies within DOJ were to be temporarily filled through delegation of the Attorney General's authority pursuant to sections 509 and 510." *Id.* (citing, *inter alia*, S. Rep. 105-250 at 17) ("[Section 3347(b)] forecloses the argument raised by the Justice Department."). "Congress expressly rejected that interpretation, and manifested that rejection in section 3347(b)." *Id.* The Department of Justice impermissibly seeks to reinvoke that prohibited form of authority here. For the fourth time, the government fails to address *Giraud*.

The government attempts to support this prohibited theory, but its argument relies on a simple mistake about the statutory scheme. Response at 14–16. As

background, and as the motion explains (at 46), Section 3348(d) imposes a ratification bar; if someone is unlawfully serving as acting officer, a subsequent, properly serving officer cannot ratify their actions. Section 3348(a) limits the ratification bar by specifying it applies only to a "function or duty" of the office that is non-delegable. *See Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. U.S. Dep't of Homeland Sec.*, 107 F.4th 1064, 1073 (9th Cir. 2024);[10] *see also Kajmowicz v. Whitaker*, 42 F.4th 138, 148 (3d Cir. 2022). But Section 3348(a) narrowly defines the term "function or duty" only "[i]n this section," not other sections.

Other parts of the FVRA use the same "function or duty" phrase. For example, Section 3347 (the general delegation bar) forbids the administration from using its general delegation authority to assign someone to perform the vacant office's "functions and duties." The government concludes, based on Section 3348(a)'s definition, that the Attorney General may "delegat[e] to Ms. Chattah the nonexclusive functions associated with being a United States Attorney." Response at 14. But Section 3348(a)'s narrow definition is explicitly limited only to Section 3348, so for the rest of the FVRA, the phrase "functions and duties" retains its "broader sense of *all* functions or duties of the vacant office." *Giraud*, 2025 WL 2416737, at *24. Because *Gonzales* and *Kajmowicz* are about Section 3348, not Section 3347, they are "in no way to the contrary." *Id.* at *25. Although *Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328 (Fed. Cir. 2022), credits the government's argument, it makes the same interpretive mistake. "Thus, *Arthrex* is

[10] The defense maintains *Gonzales* was wrongly decided, as explained in Judge Christen's dissent, and preserves the argument for further review.

not persuasive." *Giraud*, 2025 WL 2416737, at *25. For the fifth time, the government fails to address *Giraud*.

As the FVRA explains, the administration cannot use general delegation authority as an end-run around the statute. The government's theory thus fails.[11]

### D. The government's reading violates the Appointments Clause.

Finally, even if the administration's position complied with the relevant statutes (as discussed above, it does not), then its reading would violate the Appointments Clause. *See* Motion at 38–43. Especially following the Supreme Court's *Arthrex* decision, U.S. Attorneys are principal officers requiring Senate confirmation. And the same is true of interim or acting U.S. Attorneys—at least if the government's instant statutory arguments are blessed. That means that, even if the statutes do not foreclose the government's position, the Constitution does. The defense's statutory reading avoids these constitutional issues. At a minimum, then, the Appointments Clause problems with the government's arguments further support the defense's reading of the FVRA and Section 546.

In response, the government principally claims that *Arthrex*'s analysis does not make U.S. Attorneys principal officers. Response at 17–18.[12] That is so, the

---

[11] If the government's general delegation theory is correct, the position of U.S. Attorney nevertheless remains vacant, so the judges of this district have authority under Section 546(d) to appoint an interim U.S. Attorney.

[12] Although the government suggests in passing that *Arthrex* somehow did not overrule *Gantt*, *see* Response at 17, it never explains how that could be so, *see id.* As the defense has explained at length, *Arthrex*'s mode of analysis "is 'clearly

government says, because U.S. Attorneys "are supervised and can be reversed by the Attorney General and the Deputy Attorney General." *Id.* at 17.

But as the defense has explained (and in ways the government has not responded to), supervision is not dispositive. *See* Motion at 40–41. "[T]he buck stops with the" U.S. Attorney "[i]n all the ways that matter to the parties who appear before [the government]." *United States v. Arthrex*, 594 U.S. 1, 17 (2021). So any "supervision functions still fall short of the kind that would render the [U.S. Attorney] [an] inferior officer[]." *Intercollegiate Broad Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1339 (D.C. Cir. 2012). On its face, then, *Arthrex* supports the defense, not the government.

Beyond its erroneous *Arthrex* claim, the government also misreads dicta from *Myers v. United States*—a case about the president's ability to remove a postmaster. *See* Response at 18 (citing 272 U.S. 52, 159 (1926)). Per the government, that case's one-sentence suggestion that the removal power extends "to a United States attorney, an inferior officer" somehow prevents U.S. Attorneys from requiring Senate confirmation under the Appointments Clause. *Id.*

Not so. For one, *Myers* did not involve a U.S. Attorney. *See* 272 U.S. at 107 (involving a "first-class postmaster"). So *Myers's* conclusory one-sentence reference to that office is dicta. *In re Grand Jury Investigation*, 315 F. Supp. 3d 602, 642

irreconcilable' with" *Gantt*, such that this Court is bound by *Arthrex* and should "'reject [*Gantt*] as having been effectively overruled.'" Motion at 41 (quoting *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc)).

(D.D.C. 2018) (identifying that the U.S. Attorney statement in *Myers* was "*dicta*").[13] And, perhaps even more significantly, *Myers* was resolving a different question (removal) than the one facing this Court (appointment). *See id.* That means that *Myers* is not precedential—"or even instructive"—on the issues before this Court. *CPC Patent Techs. Pty Ltd. v. Apple, Inc.*, 34 F.4th 801, 809 (9th Cir. 2022); *see also Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985) ("[U]nstated assumptions on non-litigated issues are not precedential holdings binding future decisions."). Moreover, the *Myers* dicta is of limited value even on its own terms. *See id.* The case merely identifies that U.S. Attorneys can be removed by the president without Senate approval—something true of most officers, both principal and inferior. 272 U.S. at 159. But that does nothing to resolve whether their appointment must comply with the Appointments Clause. *See id.*

The government finally insists that even if a permanent U.S. Attorney is a principal officer, then under *United States v. Eaton*, 169 U.S. 331, 343 (1898), a temporary U.S. Attorney like Ms. Chattah is an inferior officer. Response at 17. But that doctrine presumes the "temporary" officer is serving "for a limited time,

---

[13] As various courts have observed, *Myers* contains "abundant dicta." *Wilcox v. Trump*, 775 F. Supp. 3d 215, 232 (D.D.C. 2025). It is thus ordinarily treated as resolving only the postmaster removal question. *E.g.*, *id.* at 233; *Morrison v. Olson*, 487 U.S. 654, 687 & n.24 (1988) (rejecting analogous reasoning in *Myers* to that invoked by the government here as "dicta"; "We recognized that the only issue actually decided in *Myers* was that 'the President had power to remove a postmaster of the first class, without the advice and consent of the Senate as required by act of Congress.'") (quoting *Humphrey's Executor v. United States*, 295 U.S. 602, 626 (1935)); *Kalaris v. Donovan*, 697 F.2d 376, 389 n.54 (D.C. Cir. 1983) (identifying that "*Myers*' broadest dicta expressed the view that the President's removal powers extended to *all* government employees who were not judges on Article III courts").

and under special and temporary conditions." Motion at 42 (quoting *Eaton*, 169 U.S. at 344). And the government's theories, if accepted by this Court, would permit Ms. Chattah to exercise the U.S. Attorney's full authority and to do so potentially indefinitely. The government never explains how that service would be limited, special, and temporary such that *Eaton* would render her an inferior officer. Absent such a limiting principle, the Appointments Clause problem persists.

## II. The Court should dismiss the indictment; the judges of the district may select an interim U.S. Attorney.

The appropriate remedy is to dismiss the indictment with prejudice. If the Court declines to dismiss (with or without prejudice), it should enter a disqualification order. Because the office is vacant, the judges of this district have authority to appoint an interim U.S. Attorney.

### A. The Court should dismiss the indictment or enter a disqualification order.

The Court should dismiss the indictment with prejudice. Motion at 43–47. Dismissal is appropriate under *United States v. Bundy*, 968 F.3d 1019 (9th Cir. 2020), *United States v. Trump*, 740 F. Supp. 3d 1245 (S.D. Fla. 2024), and the ratification bar, 5 U.S.C. § 3348(d)(2), among other precedents. The government spends no time addressing these authorities. Instead, it presents a series of irrelevant arguments.

First, the government claims dismissal is prohibited under *United States v. Gantt*, 194 F.3d 987 (9th Cir. 1999). Response at 18–19. That case involved an invalidly certified suppression appeal; its discussion regarding indictments is dicta;

and it does not address the principles discussed in *Bundy*, *Trump*, or the ratification bar. Motion at 45 n.45.

The government's other citations are unavailing. Response at 19–20. For example, *United States v. Hilario*, 218 F.3d 19 (1st Cir. 2000), concluded "an infirmity in the appointment of the United States Attorney" would not "invalidate [a] notice of appeal." *Id.* at 22. That holding is irrelevant to indictments. "[T]he Solicitor General" decides whether to appeal, not "the local United States Attorney," *id.*; by contrast, the U.S. Attorney decides whether to authorize prosecution.[14]

Second, perhaps intending to address *Bundy*, the government insists "there is no Due Process right to choose one's prosecutor." Response at 20. But as with the right to an impartial judge or a properly constituted jury, *id.*, the Due Process Clause should require the prosecution to be impartial and properly appointed. *See* 18 U.S.C. § 208(a) (criminalizing certain conflicts of interest); *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 807, 809 n.21 (1987) (imposing as a matter of "supervisory authority" a "requirement of a disinterested prosecutor," and reserving the constitutional issue); *cf. Erikson v. Pawnee Cnty. Bd. Of Cnty. Com'rs*, 263 F.3d 1151, 1154 (10th Cir. 2001) ("[T]he participation of a privately-retained

---

[14] In *United States v. Suescun*, 237 F.3d 1284, 1287–88 (11th Cir. 2001), the court concluded the defendant forfeited a challenge to the interim U.S. Attorney; that conclusion has no bearing here. Neither *United States v. Ruiz Rijo*, 87 F. Supp. 2d 69 (D.P.R. 2000), *United States v. Baldwin*, 541 F. Supp. 2d 1184 (D.N.M. 2008), nor *United States v. Young*, 541 F. Supp. 1226 (D.N.M. 2008), resolved arguments based on the principles discussed in *Bundy*, *Trump*, or the ratification bar. Separately, *Baldwin* and *Young* involved indictments brought under an interim U.S. Attorney who the defense conceded was properly appointed; the challenge involved a new interim U.S. Attorney appointed mid-prosecution.

attorney in a state criminal prosecution does not violate the defendant's right to due process under federal law unless the private attorney effectively controlled critical prosecution decisions . . . includ[ing] whether to prosecute.") (cleaned up). Even if no due process violation exists, the Court should still exercise its inherent authority to "protect[] the integrity of the federal courts." *Bundy*, 968 F.3d at 1031. The government's position poses a risk not just to the integrity of this prosecution, but also to the Senate's constitutional advise-and-consent function and the judiciary's authority—dating back to the Civil War era—to select an interim U.S. Attorney.

Third, the government maintains the indictment is valid under Criminal Rule 7 because a validly serving Assistant U.S. Attorney signed it. Response at 21. But that attorney presumably obtained and signed the indictment under Ms. Chattah's authority and supervision. As the motion explains (at 47–48), the Court should disqualify any attorneys acting under Ms. Chattah's supervision (as opposed to the Attorney General's supervision). If an Assistant U.S. Attorney signed an indictment under Ms. Chattah's supervision, the signature is invalid under Criminal Rule 7. Even if the signature complied with the criminal rules, that does not end the inquiry; rather, the motion seeks relief under authorities much broader than the criminal rules, including *Bundy*, *Trump*, and the ratification bar.

According to the government, Ms. Chattah "did not even review or approve the indictment[] in the first place," and it offers to submit relevant documents establishing that proposition in camera. Response at 21 & n.4. Any documents bearing on this litigation should be filed on the public docket (or under seal) to allow the defense an opportunity to respond. In any event, as the motion explains, the

statutory and regulatory schemes require the U.S. Attorney to authorize a prosecution. The government does not dispute that proposition. If the U.S. Attorney's Office in this district does not follow that practice, that is a problem for other cases—not a way to avoid dismissal in the instant case. Regardless, the attorneys who approved the prosecution were still apparently acting under Ms. Chattah's authority and supervision, so their actions were likewise voidable.

Fourth, the government disputes the defendant's Article III standing to seek a remedy. Response at 21–22. The argument is puzzling. The government relies on a series of civil cases, but this is a criminal case; the defense is objecting to the indictment and the qualifications of the head prosecutor in the district. A criminal defendant undoubtedly has standing to challenge the charging document and prosecutorial authority. When a defendant's liberty is in jeopardy, it is unclear what more harm could be required to confer standing.

Fifth, the government opposes disqualifying attorneys acting under Ms. Chattah's direction. Response at 19–20. The government claims the Assistant U.S. Attorneys can continue working "subject to supervision by both Ms. Chattah and Senate-confirmed officials in Main Justice." *Id.* at 19. The attorneys can continue working subject to supervision by Senate-confirmed Main Justice officers, but not Ms. Chattah. *See Giraud*, 2025 WL 2416737, at *30; *see also United States v. Giraud*, No. 1:24-cr-768, 2025 WL 2196794, at *9–11 (D.N.J. Aug. 1, 2025). For the sixth time, the government fails to address *Giraud*.

The government suggests federal courts should hesitate before disqualifying an entire U.S. Attorney's Office. Response at 19–20. It primarily relies on *United*

*States v. Williams*, 68 F.4th 564 (9th Cir. 2023). That case involved the question whether one Assistant U.S. Attorney's alleged misconduct should be imputed horizontally to the entire office—not the vertical consequence of an acting U.S. Attorney who was ineligible to serve. In any event, the defense is not seeking to disqualify the entire U.S. Attorney's office; rather, the defense seeks to disqualify Ms. Chattah and any attorneys who are operating in whole or in part under her authority, supervision, and direction. If Main Justice supervises the Assistant U.S. Attorneys, they need not be disqualified. That "stops well short of officewide disqualification." *Giraud*, 2025 WL 2196794, at *10. For the seventh time, the government fails to address *Giraud*.

The government's remedial arguments are no more successful than its merits arguments. The Court should reject them.

**B. The judges of this district may select an interim U.S. Attorney.**

Ms. Chattah's appointment occurred on March 27, 2025. *See* Response Exhibit 1. Her interim service therefore expired on July 25. Because her term has expired and the office remains vacant, the judges of the district may select a new interim U.S. Attorney under Section 546(d).

The government suggests Ms. Chattah's service was not set to expire until July 30, 2025—120 days from April 1, when she began serving as interim U.S. Attorney. Because she resigned on July 28, the government concludes, her service never expired. Response at 22. But the appointment itself occurred on March 27 (although, admittedly, it was not effective until April 1), so March 27 is the

operative date. In any event, Section 546(d) applies when, as here, an interim U.S. Attorney's resignation on day 119 is not a bona fide resignation. Motion at 48–49; *see also id.* at 20–22; Response Exhibit 2 ("I hereby resign my position as Interim United States Attorney . . . . I look forward to continuing to lead the U.S. Attorney's Office."). The government does not respond to this argument.

The government maintains the defense lacks "standing to compel the district court to make such an appointment" because Section 546(d) is discretionary. Response at 22. The defense is not seeking to compel such an appointment. But the authority exists, and the judges of this district should consider exercising it.

## CONCLUSION

The Court should dismiss the indictment with prejudice; dismiss the indictment without prejudice; or disqualify Ms. Chattah and any attorneys acting under her direction.

**Dated**: September 17, 2025.

Respectfully submitted,

Rene L. Valladares
Federal Public Defender

*/s/ Jeremy C. Baron*
Jeremy C. Baron
Assistant Federal Public Defender

*/s/ Heidi Ojeda*
Heidi Ojeda
Assistant Federal Public Defender

*/s/ Sean A. McClelland*
Sean A. McClelland
Assistant Federal Public Defender